George ULLMAN and Joe Simon, interested parties, Appellants,

v.

Kyle Z. GRAINGER, Jr., et al., Appellees.

Nos. 22153, 22153-A.

United States Court of Appeals
Ninth Circuit.

June 18, 1968.

Rehearing Denied Oct. 9, 1968.

John N. Frolich (argued), Los Angeles, Cal., for appellant.

Arnold M. Quittner (argued), of Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for the appellee.

Before BARNES and ELY, Circuit Judges, and SMITH,* District Judge.

RUSSELL E. SMITH, District Judge.

Kyle Z. Grainger, Jr., is the Reorganization Trustee (Trustee) in a proceeding under Chapter 10 of the Bankruptcy Act.[1] This appeal from three orders made by the Bankruptcy Court raises one question: i. e., the right of appellants Ullman and Simon to purchase some real and personal property which were assets of the estate.

In December, 1966, the Court ordered that the property be sold. A hearing was had on January 19, 1967; and on February 10, 1967, and order was entered which provided, in part:

"* * * that the Court finds that the offer of George Ullman and Joe Simon, as more particularly set forth in the Escrow Instructions attached hereto, marked Exhibit 'A' and by this reference incorporated herein, is the highest and best offer obtainable by the Reorganization Trustee and that the acceptance of each offer is in the best interests of this estate and of its creditors, * * *."

The Escrow Instructions which were attached to the order were dated Feb-

---

* Hon. Russell E. Smith, United States District Judge, District of Montana, sitting by designation.

1. 11 U.S.C. Chapter 10, §§ 501 to 676.

ruary 3, 1967, but were not signed by the parties. They did, however, contain this clause:

> " 'Seller believes that the only lease on the subject property in effect at the present time is a lease between seller's predecessor in title and the Parking Lot Operator, and that said lease contains a cancellation provision providing that any new purchaser of said property may cancel said lease upon 30 days written notice. *The offer to purchase subject property is conditioned upon a 30 day cancellation clause in said Parking Operator's Lease.*' " (Emphasis added.)

On February 10, 1967, Escrow Instructions were executed by the parties. These instructions contained the above quoted clause and also additional clauses which had not been incorporated in the February 3rd instructions:

> "3) In the event that buyer is ready to close this escrow within the initial period of 30 days or in any extended period as set forth in paragraph 2 above, and seller is not able to deliver possession of the parking lot premises to buyer at the time when escrow is ready to be closed by buyer by the deposit of the balance of the funds due from him, then *it is agreed that seller and not buyer will be charged with the pro-ration of interest on the first trust deed and taxes from that period of time when the escrow could have been closed by the buyer until the time when the escrow actually closes. Seller shall have the right to abandon this escrow if he determines that he cannot deliver possession of the parking lot within a reasonable period of time to buyer.*
>
> \*　\*　\*　\*　\*　\*
>
> "4) In the event that this escrow fails to close due to any default or inability of the seller to deliver a good and marketable title or any other default on the part of the seller, *then seller's sole responsibility to buyer shall be the return of buyer's deposit of $27,500.00* without offsets or costs, and seller

agrees to pay all escrow and title charges incurred." (Emphasis added.)

The first quoted clause referred to a lease which had been given to Charter Auto Parks, a parking lot operator. Charter Auto Parks was in possession of the property and the lease under which it held possession did not contain a thirty day cancellation clause. It is sufficient for the purposes of this opinion to say that the lease did create a possession problem. On March 23, 1967, the attorney for the Trustee wrote the attorney for the appellants as follows:

> " \*　\*　\* Under the existing circumstances and in view of the apparent intent of Charter Auto Parks to litigate the matter, the Trustee now advises you on behalf of the buyers (George Ullman and Joe Simon) that it appears unlikely that possession of the parking lot can be delivered within a reasonable period of time and, accordingly, it now appears that the Trustee will be required to refund the deposit of $27,500. Please advise me on or before 5:00 p. m., March 30, 1967, whether the buyers will accept the property subject to whatever rights have been created in Charter Auto Parks or their successors by reason of the lease of January 20, 1966."

Appellants, through their attorneys, replied on April 13 as follows:

> " \*　\*　\* Under the circumstances, it occurs to me that arrangements can be made between us that (1) the escrow closes and title be delivered to Ullman and Simon, and (2) that you proceed with your action to obtain possession of the parking lot in a diligent manner and I will do everything in my power to assist in said litigation.
>
> "I have advised my clients of the probability that even if there is a verdict in favor of the reorganization trustee in the bankruptcy court, there is always the possibility of a review and appeal. I pointed out to my clients, Ullman and Simon, that this may delay their obtaining actual possession of the property for some period

of time. However, I recommended to them that they complete their sale of the subject property at 929 South Hope Street and close the escrow as soon as you are prepared to deliver title to them upon the agreement of the reorganization trustee that he will proceed diligently as outlined above.

"Under the circumstances you are advised that it is our desire to complete the sale as set forth above."

On April 26, 1967, the Trustee procured an *ex parte* order vacating the court order of February 10, which confirmed the sale to appellants and ordered a hearing to consider a sale to other parties. Nothing was then left to be done to abandon the contract except to return the deposit of $27,500.00 as provided in paragraph 4 of the contract. On the same day the Trustee, through his attorney, advised the escrow holder to return the deposit of $27,500.00. At that hearing, on May 1, 1967, Joe's Auto Parks bid $309,000.00 for the real property, and on May 4th an order was entered approving the sale to Joe's Auto Parks. On May 5th appellants procured an *ex parte* order vacating the order confirming the sale to Joe's Auto Parks and an order directing the Trustee to show cause why the sale to appellants should not be completed. On May 22nd, after a hearing, an order was issued denying relief to appellants, and on June 21, 1967 an order was entered denying appellants' petition for rehearing.

▆ Appellants now contend that there was a contract of sale which resulted in an equitable conversion under California law;[2] that they had rights which could not be terminated without a hearing after notice and that upon a hearing the court, respecting the sanctity of judicial sales, should have required the Trustee to proceed with the sale to appellants. All of these contentions ignore the fact that the contract did give the Trustee the right to abandon it.

Both parties were concerned with the possession problem. Appellants protected themselves by conditioning their offer upon the existence of a thirty day cancellation clause in the Charter Auto Parks' lease. The Trustee, who, if unable to deliver possession, was required to pay interest on a substantial loan and taxes, protected himself by providing that he might abandon the contract and return the money. When the Trustee discovered that there was no cancellation clause and that he did have a possession problem, he had a right to abandon the contract. If it be assumed that at any time prior to the time that the Trustee did abandon the contract the appellants might have waived the provisions of it relative to possession, which were for their benefit, and thus have destroyed the Trustee's right to abandon—that did not happen.

If the Trustee's letter of April 13th was an offer to waive the Trustee's right to abandon in exchange for appellants' promise to purchase subject to the Charter Auto Parks' lease, there was no acceptance of that offer. Appellants, instead of unconditionally accepting the terms of the Trustee's letter, rejected it by inserting a condition that the Trustee should litigate the possession problem with Charter Auto Parks. Appellants did not agree that they would waive the provisions of the escrow instructions requiring the Trustee to pay interest and taxes in the event he was unable to deliver possession as required. This exchange of correspondence did not result in a modification of the contract created by the escrow instructions.

▆ Authorities are cited to the effect that a sale in bankruptcy is a judicial sale and that the integrity of judicial sales should be preserved. We agree. In this case the Trustee did no violence in exercising the right to abandon. He did not abrogate the contract —he simply exercised a right given to him by the contract.

2. It is extremely doubtful if a contract conditioned as this one was would ever result in an equitable conversion, but we need not reach that problem.

Appellants complain about a lack of notice. The order which finally confirmed the action of the Trustee in abandoning the contract was made after notice and a hearing. If the action of the Trustee in abandoning required court approval, that approval was given.

Appellants would be entitled to prevail if the Trustee could not abandon the contract without court approval given after a hearing and prior to the act of abandonment, if the appellants had a right to notice of that hearing and a right pending the hearing to change their offer by eliminating the condition in it, and if such a change would cancel out the Trustee's right to abandon. We are unable, however, to read into any notice provisions of the bankruptcy law a right in a party who bears a contractual relationship with the estate to a notice of hearing, so that pending the hearing he may alter his contractual relations with the estate.

The orders are affirmed.